J-A26031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TAREK ELTANBDAWY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MMG INSURANCE COMPANY, RESTORECARE, INC., KUAN FANG CHENG | |
| Appellees | No. 2243 MDA 2013 |

Appeal from the Judgment Entered December 23, 2013
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 10-2015 Civil

| | |
|---|---|
| TAREK ELTANBDAWY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MMG INSURANCE COMPANY, RESTORECARE, INC., KUAN FANG CHENG | |
| Appellants | No. 45 MDA 2014 |

Appeal from the Judgment Entered December 23, 2013
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 10-2015 Civil

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                **FILED NOVEMBER 20, 2014**

Appellant, Tarek Eltanbdawy, appeals from the December 23, 2013 judgment[1], entered in favor of Appellee, MMG Insurance Company (MMG). MMG has filed a cross-appeal from the same judgment.[2]  After careful review, we affirm the judgment entered in favor of MMG.  As a consequence of our affirmance, we dismiss MMG's cross-appeal as moot.

The trial court summarized the relevant factual and procedural history of this case as follows.

> [Appellant] opened the Hampden Diner on August 28, 2008.  The business was insured under a business owner's policy issued by [] MMG.  When [Appellant] arrived to work on March 4, 2009 he discovered that a pipe had burst and the diner had flooded.  He immediately reported the loss to his insurance agent who contacted [] MMG.
>
> An adjuster was on site immediately and helped [Appellant] arrange to have the premises repaired as quickly as possible.  Since he operated on a cash basis, he needed to be open in order to pay his bills.  Nevertheless, over his objection,

---

[1] Although Appellant purports to appeal from the November 20, 2013 order denying his post-trial motion, his appeal properly lies from the entry of judgment.  **Hart v. Arnold**, 884 A.2d 316, 325 n.2 (Pa. Super. 2005) (citation omitted), *appeal denied*, 897 A.2d 458 (Pa. 2006).  Therefore, we have corrected the caption accordingly.

[2] Additionally, judgment was entered in favor of Appellant and against Appellee Kuan Feng Cheng (Cheng), who was the owner of the property in question, in the amount of $120,000.00.  Judgment was also entered in favor of Appellee RestoreCare and against Appellant.  Appellant does not appeal from any part of the judgment pertaining to his claim against RestoreCare.  In addition, Cheng and Appellant reportedly settled their dispute.  As a result, Cheng and RestoreCare are not parties to this appeal.

[Appellant] was forced to close the restaurant while the repairs were being made.

[Appellant] paid $5[,]500 per month plus property taxes to rent the premises. He employed a chef, two cooks, bus boys, eight waitresses and himself. [Appellant] testified that in the six months he was open before the flood the business generated enough cash to pay all of his bills, including his payroll, rent, and over $11,000 in property taxes. In addition, the business was profitable enough to allow him to pay $8[,]000 against the $20,000 debt incurred for startup inventory. He also used the business income to purchase $10,000 worth [of] additional equipment.

MMG paid for the repairs to the premises. However, the parties were unable to agree upon how much [Appellant] was entitled to receive for his loss of business income. The policy obligated MMG to pay the "actual loss of [b]usiness [i]ncome" sustained during the time the business was not operable. The policy goes on to provide:

> (c) Business Income means the:
>
> > (i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, … ; and
> >
> > (ii) Continuing normal operating expenses incurred, including payroll.

[Appellant] submitted a profit and loss statement to MMG which showed gross sales of $270,000 for the period of September 30, 2008 through the end of February 2009. MMG's forensic accountant computed that the gross sales over that time period were only $123,867. The insurance policy provides that "(t)his policy is void … if you … at any time intentionally conceal or misrepresent a material fact concerning … (a) claim under this policy."

- 3 -

Trial Court Opinion, 5/2/14, at 1-3 (internal footnote citations omitted).

On March 22, 2010, Appellant filed a complaint against MMG, Cheng, and RestoreCare, Inc. (RestoreCare), the company hired by MMG to make repairs to the property, alleging claims of breach of contract and negligence against MMG, a claim of negligence against RestoreCare, and claims of breach of contract and intentional infliction of emotional distress against Cheng. On April 23, 2010, Appellant filed an amended complaint, alleging breach of contract claims against MMG and Cheng, a negligence claim against RestoreCare, and a claim of intentional infliction of emotional distress against Cheng.

On February 25, 2013, this case proceeded to a jury trial. On March 1, 2013, at the conclusion of said trial, the jury found that both Appellant and MMG breached the contract, and the jury declined to award damages to Appellant on his claims against MMG. The jury also found in favor of RestoreCare. However, as to Appellant's claims against Cheng, the jury awarded Appellant a total of $120,000.00 in compensatory and punitive damages. On March 11, 2013, Appellant filed a timely post-trial motion. On March 15, 2013, MMG filed a timely cross-motion for post-trial relief. On November 20, 2013, the trial court entered an order denying Appellant's post-trial motion and dismissing MMG's cross-motion as moot. On December 30, 2013, judgment was entered in favor of MMG and RestoreCare and against Appellant. However, judgment was also entered in

favor of Appellant and against Cheng. On December 18, 2013, Appellant filed a timely notice of appeal. On December 30, 2013, MMG filed a timely notice of cross-appeal.[3]

On appeal, Appellant raises the following two issues for our review.

> 1. Did the [trial c]ourt err in submitting an interrogatory to the jury on the issue of whether Appellant made misrepresentations or committed fraud when there was no evidence that MMG relied upon any such alleged misrepresentations or fraud?

> 2. Did the [trial c]ourt err in failing to grant a new trial when the evidence showed that [Appellant] had paid his insurance premiums and was, therefore, entitled to at least $5,000.00 for the month that his business was closed for repairs?

Appellant's Brief at 4. On its cross-appeal, MMG raises the following issues for this Court's review.

> A. Whether [] Appellant presented sufficient evidence from which a jury could conclude that he sustained a loss of business income under the applicable insurance policy?

> B. Whether the business income loss provision in MMG's policy must be interpreted to offset ongoing expenses with net business losses so as to give effect to all of the language in the policy and avoid compensation that is greater than the actual loss sustained?

MMG's Brief at 1.

---

[3] Appellant, MMG, and the trial court have complied with Pa.R.A.P. 1925.

Both of Appellant's issues on appeal ask for a new trial. We begin by noting our well-settled standard of review.

Our review of the trial court's denial of a new trial is limited to determining whether the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case. In making this determination, we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict. Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.

*Joseph v. Scranton Times, L.P.*, 89 A.3d 251, 260 (Pa. Super. 2014) (citations omitted).

In his first issue, Appellant avers that the trial court erred in submitting an interrogatory to the jury that instructed that if Appellant materially breached his contract with MMG, he cannot recover damages. Appellant's Brief at 9. In Appellant's view, "the trial [court] failed to instruct the jury that if there was a misrepresentation or fraud, MMG had to rely on it in order for it to be actionable." *Id.* at 9-10.

In examining jury instructions, our scope of review is limited to determining whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. Error will be found where the jury was probably [misled] by what the trial judge charged or where there was an omission in the charge. A charge will be found adequate unless the

- 6 -

issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to a fundamental error. In reviewing a trial court's charge to the jury[,] we must look to the charge in its entirety. Because this is a question of law, this Court's review is plenary.

*Passarello v. Grumbine*, 87 A.3d 285, 296-297 (Pa. 2014) (citation omitted).

Appellant avers that the trial court erred in its interrogatory to the jury concerning whether Appellant materially breached the contract because MMG was required to show that it relied on Appellant's alleged misrepresentations. Appellant's Brief at 9-10. In support of this contention, Appellant cites to our Supreme Court's decisions in *Porreco v. Porreco*, 811 A.2d 566 (Pa. 2002) (plurality) and *Bortz v. Noon*, 729 A.2d 555 (Pa. 1999). Appellant's Brief at 10.

In *Porreco*, our Supreme Court considered a divorce case involving a pre-nuptial agreement. *Porreco*, *supra* at 569-570. The *Porreco* Court framed the issue as whether the husband "fraudulently induced [the wife] to sign the prenuptial agreement by misrepresenting the value of the engagement ring on the list of her individual assets, which he prepared as part of the prenuptial agreement." *Id.* at 570. Our Supreme Court listed the six prong test for fraudulent misrepresentation as follows.

In order to void a contract due to a fraudulent misrepresentation, the party alleging fraud must prove, by clear and convincing evidence: (1) a

representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance.

*Id.* The ***Porreco*** Court cited to ***Bortz*** for this test. The Court went further to observe that "[t]o be justifiable, reliance upon the representation of another must be reasonable." *Id.* at 571. Ultimately, our Supreme Court rejected the wife's argument that her "alleged reliance on [her husband's] misrepresentation of the value of the ring on the schedule of her assets was justifiable." *Id.* at 571-572. This precluded the wife from having the pre-nuptial agreement declared void. *Id.* at 572.

In ***Bortz***, our Supreme Court discussed intentional misrepresentations as actionable in tort. *Id.* at 560. Specifically, the ***Bortz*** Court granted *allocatur* to decide whether a real estate agent "had a duty to ascertain whether the septic system had actually passed the dye test and if her failure to do so amounted to a misrepresentation to the [b]uyer." *Id.* at 559. Our Supreme Court noted that the six-element test it recited initially originated from the Restatement (Second) of Torts. *Id.* at 560. Ultimately, the ***Bortz*** Court concluded that "[w]hile the Agent made an affirmative misrepresentation that the dye test was clear, there is no finding that the Agent made any misrepresentation with knowledge that it was false." *Id.* at

561. As a result, the buyer could not recover against the real estate agent for intentional misrepresentation. *Id.*

In this case, the specific insurance policy provision at issue states that the policy is void if the insured "at any time, intentionally conceal[s] or misrepresent[s] a material fact concerning … a claim under [the] policy." Appellant's Amended Complaint, 4/23/10, Exhibit B, at 41. As the trial court pointed out, "[w]hether or not [Appellant] intentionally misrepresented a material fact in connection with his claim was a question of fact for the jury to determine … [because i]f he did so, the express language of the policy voided coverage." Trial Court Opinion, 5/2/14, at 3. The policy does not purport to incorporate the elements of common law fraud in any way. Neither Appellant nor MMG raised a claim for the tort of intentional misrepresentation, nor was either seeking to rescind the entire contract on this basis. Rather, MMG believed it did not have to pay certain benefits under the policy based on its belief that Appellant made material misrepresentations concerning the value of part of his claim. This was a question for the jury to decide. As a result, neither *Porreco* nor *Bortz* control the instant case. Based on these considerations, we conclude the trial court did not abuse its discretion in submitting this interrogatory to the jury for its consideration. *See Passarello*, *supra*.

In his second issue, Appellant avers that even if he did make any misrepresentations, he would still be entitled to a new trial because "the

evidence showed that Appellant had paid his insurance premiums and was, therefore, entitled to at least $5,000.00 for the month that his business was closed for repairs." Appellant's Brief at 13. However, before we may review the merits of Appellant's claim, we must first ascertain whether Appellant has waived this issue.

Pennsylvania Rule of Appellate Procedure 2119 states that an appellant's "argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a).

> The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities. This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority. Failure to cite relevant legal authority constitutes waiver of the claim on appeal.

*In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) (internal quotation marks and citations omitted).

In this case, Appellant's brief consists of his argument heading, which we have quoted above, followed by one sentence stating Appellant is entitled to a new trial. Appellant's Brief at 13. Appellant then block quotes an unattributed "Section 19.110," which is a jury instruction on material breach

of contract. *Id.* Appellant includes with the quote a block quote to a subcommittee note, containing citations to two federal district court cases from the Western District of Pennsylvania.[4] *Id.*

In our view, Appellant's second argument on appeal is woefully lacking in development as it contains one original sentence and relies entirely on one unattributed block quote. Appellant's brief does not make any attempt to explain the applicability of the quoted charge to this case or provide any explanation as to why this entitles him to a new trial. As a result, we deem Appellant's second issue on appeal waived for lack of development. *See In re Estate of Whitley*, *supra*.

Based on the foregoing, we conclude both of Appellant's issues on appeal are either waived or devoid of merit. Accordingly, the trial court's December 23, 2013 judgment in favor of MMG and against Appellant is affirmed. As we have resolved all of Appellant's issues in MMG's favor, we need not address any issues in its cross-appeal. Therefore, MMG's cross-appeal is dismissed as moot.

---

[4] Appellant does not provide a source citation for this instruction or the subcommittee note that follows it.

Judgment affirmed.  Cross-appeal dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2014